**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4766-17T4

IN THE MATTER OF MARITZA
AVILLEIRA, MARIA FEBLES,
MIGUEL RIVERA, JUDICIARY
CLERK 2 BILINGUAL IN
SPANISH AND ENGLISH,
MONMOUTH VICINAGE.

_____

Argued November 4, 2020 – Decided December 11, 2020

Before Judges Yannotti and Natali.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-2144.

Mark J. Molz argued the cause for appellants Maritza Avilleira and Maria Febles.

Pamela N. Ullman, Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission (Gurbir S. Grewal, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Pamela N. Ullman, on the brief).

PER CURIAM

Maritza Avilleira and Maria Febles appeal from a final determination of

the Civil Service Commission (Commission), dated May 7, 2018, which denied

a request by the Monmouth Vicinage of the Superior Court of New Jersey (Monmouth) to appoint them retroactively to the positions of Judiciary Clerk 2, Bilingual in Spanish and English.[1]  We affirm.

This appeal arises from the following facts.  On December 26, 2012, Monmouth posted a career opportunity for the position of "Judiciary Clerk 2 Bilingual (Provisional), Support Staff Band, Level 1-2 Basic, Classified."  On June 3, 2013, Monmouth appointed appellants to the positions provisionally.  On the same day, appellants each received a "Report on Progress of Probationer" indicating that their four-month working test period began as of their appointment dates.  Appellants did not, however, take the civil service open competitive examination after their provisional appointments, as required by N.J.A.C. 4A:4-1.5(b).

At some point, Monmouth asked appellants to take the Bilingual Communicative Ability Test (BICAT) for the position of Judiciary Clerk 2, Bilingual in Spanish and English (S00633P).  The BICAT tests an applicant's language proficiency and ranks the applicant in three levels of competence, with level 1 the lowest and level 3 being the highest rank.  In July 2013, appellants

_____

[1]  We note that the Commission also denied Monmouth's request for the retroactive appointment of Miguel Rivera.  Monmouth and Rivera have not appealed the Commission's decision.

A-4766-17T4

both took and passed the BICAT. Avilleira was ranked at level 1 and Febles was ranked at level 3.

In August 2015, Monmouth posted a career opportunity announcement for "Judiciary Clerk 3[,] Support Staff Band[,] Level 3 – Journey (Career Service)" with a closing date of August 17, 2015. This position requires an employee to "have an aggregate of one year of permanent service as of the announced closing date . . ." in one of four titles, including Judiciary Clerk 2 or Judiciary Clerk 2 Bilingual. Appellants applied for the position of Judiciary Clerk 3, and on February 8, 2016, both were appointed to that title.

After one pay period, Monmouth's Human Resources Department (HR) determined that appellants were ineligible for promotion to Judiciary Clerk 3 because they had never held "permanent status in [their] Judiciary Clerk 2 title[s]." Terry Mapson-Steed, the division manager of HR, informed appellants they had never been appointed on a permanent basis after their provisional appointments.

Mapson-Steed told appellants that following their provisional appointments in 2013, they were required to "apply for and pass the [Commission's] open competitive exam for the title." Appellants were returned to their provisional appointments in the title of Judiciary Clerk 2 and were

instructed to apply for the Judiciary Clerk 2, Bilingual in Spanish and English examination, "which closed on February 26, 2016."

Appellants took and passed the exam, and on April 30, 2016, they received provisional appointments to the title of Judiciary Clerk 2, Bilingual in Spanish and English. Avilleira received a permanent appointment on May 13, 2016, and Febles received a permanent appointment on December 7, 2016.

In September 2017, Monmouth requested that the Commission's Division of Agency Services (AS) grant appellants retroactive permanent appointments to the title of Judiciary Clerk 2, Bilingual in Spanish and English, with an effective date of January 2, 2014. Monmouth stated that in 2013, it erroneously generated working test period forms for appellants as if they had received regular appointment. Monmouth also asserted that, despite this error, appellants had successfully completed their respective working test periods and passed the BICAT.

Monmouth claimed that it had no record of appellants' provisional status, and that during their employment, they had always been treated as permanent employees. Based on its own "administrative error," Monmouth asked AS to grant appellants retroactive appointments to January 2, 2014, which was "when the [appellants'] certification was promulgated."

On December 20, 2017, AS denied the request. AS noted that appellants had received regular appointments from the eligible list for the title of Judiciary Clerk 2, Bilingual in Spanish and English (S0110U), which was promulgated in May 2016. AS found that as of the requested retroactive appointment date of January 2, 2014, there were complete eligible lists for the positions of Judiciary Clerk 2 (S0811R) and for Judiciary Clerk 2, Bilingual in Spanish and English (S0812R). Because appellants were not on either eligible list, Monmouth could not have appointed them to either position on the requested date.

On January 19, 2018, Monmouth appealed the decision of AS to the Commission. Monmouth asserted that when appellants were first appointed, they were erroneously informed they only needed to pass the BICAT and successfully complete the working test period to gain permanent status.

Monmouth also asserted that appellants had always been treated as permanent employees and had met all related "career progression competencies" to be eligible for appointment to the Judiciary Clerk 3 positions. Monmouth contended that it would be unfair for appellants to continue to bear the "negative impact" of its "administrative error."

Appellants supplemented Monmouth's appeal with letters describing the "administrative error" the appointing authority made when they were first

appointed, as well as their respective work histories in the vicinage. They also stated that they suffered mental anguish, humiliation, and financial hardship because of Monmouth's error and their resulting "demotions."

On May 7, 2018, the Commission issued a final administrative decision on the appeal. The Commission found that AS had correctly denied Monmouth's request for the retroactive appointments. The Commission noted that on January 2, 2014, the requested retroactive appointment date, there were complete eligible lists for the titles of Judiciary Clerk 2 (S0811R) and Judicial Clerk 2, Bilingual in Spanish and English (S0812R).

Because appellants were not on the eligible lists, they could not have been appointed to the position of Judiciary Clerk 2, Bilingual in Spanish and English, on that date. The Commission acknowledged that Monmouth had provided appellants with incorrect information regarding their initial appointments. The Commission concluded, however, that granting appellants retroactive appointments would be inconsistent with the applicable civil service rules. This appeal followed.

On appeal, appellants argue that the Commission's decision to deny them retroactive appointments is arbitrary, capricious, and unreasonable. They

further argue that the Commission erroneously found there was no administrative error that warranted the retroactive appointments.

This court has "a limited role" in reviewing final decisions of a state administrative agency. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). In reviewing such decisions, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Carter, 191 N.J. 474, 482-83 (2007) (quoting Mazza v. Bd. of Trustees, 143 N.J. 22, 25 (1995)).]

Furthermore, when an agency renders a decision in the exercise of its delegated powers, we accord "substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007); In re Taylor, 158 N.J. 644, 657 (1999). We will not reverse an agency's decision unless it is "arbitrary, capricious, or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry, 81 N.J. at 579-80.

A-4766-17T4

As noted, appellants argue that the Commission erred by denying Monmouth's request to retroactively appoint them to the title of Judiciary Clerk 2, Bilingual in Spanish and English, effective January 2, 2014. They contend that the Commission has authority under N.J.A.C. 4A:4-1.10(c), to order a retroactive appointment date for a regular appointee to correct an administrative error, administrative delay, or when other good cause is shown. They argue that the Commission erred by refusing to exercise its authority under this rule.

The Commission found, however, that granting appellants the retroactive appointments would be inconsistent with the applicable civil service rules. As the Commission noted, when there is a vacancy in the competitive division of the career service, an appointing authority must request the issuance of a certification of names on the eligible list for regular appointment. N.J.A.C. 4A:4-4.1(a). The Commission or its designee then issues a certification "containing the names and addresses of the eligibles with the highest rankings on the appropriate list." N.J.A.C. 4A:4-4.2(a).

After the appointing authority receives the certification, it is required to "appoint one of the top three interested eligibles (rule of three) from an open competitive or promotional list . . . ." N.J.A.C. 4A:4-4.8(a)(3). Regular

appointees in the competitive division of the career service must then complete a working test period. N.J.A.C. 4A:4-1.1(a).

Here, the Commission found that while Avilleira and Febles had received regular appointments to the title of Judiciary Clerk 2, Bilingual in Spanish and English, in 2016, retroactive regular appointments to the positions were not warranted under the circumstances. As the Commission noted, on the requested retroactive appointment date of January 2, 2014, there were complete eligible lists for Judiciary Clerk 2 and Judiciary Clerk 2, Bilingual in Spanish and English.

Appellants were not on the list of eligibles for either position. Because N.J.A.C. 4A:4-4.8(a)(3) requires an appointing authority to appoint one of the top three interested eligibles on the list, Monmouth could not have appointed appellants to the position of Judiciary Clerk 2 on January 2, 2014.

Appellants argue that the Commission erred by finding there was no administrative error warranting relief under N.J.A.C. 4:4-1.10(c). The record does not support this argument. In its decision, the Commission noted that Monmouth had acknowledged it made what appeared to be an administrative error. The Commission pointed out that Monmouth had provided appellants

with incorrect information regarding the requirements for their initial appointments in June 2013.

The Commission found, however, that the applicable civil service rules did not authorize those initial appointments. Provisional appointments in the competitive division of the career service may only be made when:

> 1. [t]here is no complete list of eligibles, and no one remaining on an incomplete list will accept provisional appointment;
>
> 2. [t]he appointing authority certifies that the appointee meets the minimum qualifications for the title at the time of the appointment; and
>
> 3. [t]he appointing authority certifies that failure to make the provisional appointment will seriously impair its work.
>
> [N.J.A.C. 4A:4-1.5(a).]

Furthermore, a provisional appointee is required to apply for an examination that has been announced for the title. N.J.A.C. 4A:4-1.5(b). If an employee serving in provisional status fails to apply for or fails the examination, the employee shall be removed from their provisional title, in the absence of good cause for an extension. Ibid.

Here, the record shows that in June 2013, when Monmouth granted appellants the provisional appointments, there were complete eligible lists for

A-4766-17T4

the positions of Judiciary Clerk 2 and Judiciary Clerk 2, Bilingual in Spanish and English. Appellants were not on either list. The Commission correctly determined that Monmouth could not have validly appointed appellants provisionally or to permanent regular status at that time.

The Commission also noted that Monmouth claimed it had no record of appellants' provisional status. The Commission found, however, that as a State appointing authority, Monmouth "has access to employee records in the Personnel Management Information System[,] which tracks personnel activities, position activities, mass system changes, and payroll activity."

The Commission stated that "Monmouth must have initiated personnel records to record provisional appointments as new hires. Therefore, it is incredulous that this appointing authority, responsible for certification activity for many positions, would not recognize newly-hired provisional appointees."

The Commission added that in June 2013, Monmouth had requested a certification from a prior examination and "indicated three provisional appointments." The certification was issued and later extended to October 2013. Appellants took the BICAT although they had not filed applications for that exam. Thereafter, Monmouth requested cancellation of the certification "on the basis that it was not going to fill its vacant positions."

The Commission emphasized that in 2013, Monmouth did not have authority under the rules to appoint appellants to fill its vacancies. The Commission found that Monmouth had nevertheless provided appellants provisional appointments. This was a violation of N.J.A.C. 4A:4-1.5(a). The Commission noted that Monmouth "is now arguing that those appointments should be recognized as regular [appointments] effective January 2, 2014." The Commission found that Monmouth's position was "untenable."

We are convinced there is sufficient credible evidence in the record to support the Commission's findings of fact. The Commission's final decision is consistent with the applicable law and not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4766-17T4